KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Julie Cvek Curley, Esq.
jcurley@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

                                                  Chapter 11

THE HIGH STREET, INC.,            Case No. 22-11655 (MG)

                        Debtor.
----------------------------------------------------------X

## DEBTOR'S FIRST AMENDED SUBCHAPTER V PLAN

The High Street, Inc., the above captioned chapter 11 debtor and debtor-in-possession (the "Debtor") hereby proposes the following Plan pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Terms used in this Plan that are defined in the Bankruptcy Code shall have the meaning assigned therein, unless specifically defined herein:

1.1 *"Administrative Claims"* means all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under § 507(a)(2).

1.2 *"Administrative Professional Fee Claim"* means any Administrative Claim of a professional subject to allowance under §§ 330 or 503 of the Bankruptcy Code or an order of the Bankruptcy Court.

1.3 *"Allowed"* means that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4 *"Avoidance Claim"* means any cause of action assertable under sections 510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy law.

1.5 *"Ballot"* means the form transmitted with the Plan to those entitled to vote on the Plan, on which they may vote to accept or reject the Plan pursuant to Bankruptcy Rule 3018 and § 1126 of the Bankruptcy Code.

1.6 *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. in effect for this case.

1.7 *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, Manhattan Division presiding over the Chapter 11 Case.

1.8 *"Bankruptcy Rule(s)"* means the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto, in effect for this case.

1.9 *"Business Day"* means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.10 *"Cash"* means legal tender of the United States of America or cash equivalents.

1.11 *"Chapter 11 Case"* means the chapter 11 case commenced by the voluntary filing by the Debtor and assigned case number 22-11655 (MG).

1.12 *"Claim"* is defined in § 101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the Chapter 11 Case for a tax entitled to priority under § 507(a) of the Bankruptcy Code.

1.13 *"Class"* means a category of Holders of Claims as described in Articles III and IV.

1.14 *"Confirmation Date"* means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.15 *"Confirmation Order"* means the order of the Bankruptcy Court pursuant to § 1129 of the Bankruptcy Code confirming the Plan.

1.16 *"Debtor"* means The High Street, Inc.

1.17 *"Disputed Claim"* means (a) any Claim or portion of a Claim (other than an Allowed Claim) which is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent; or (c) a Claim which has been filed pursuant to § 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation by the Bankruptcy Code and Bankruptcy Rules by an Order of the Court, or by this Plan, which objection has not been determined, in whole or in part by a Final Order.

1.18  "*Distribution*" means a payment of Cash required under this Plan to be distributed to the holders of Allowed Claims.

1.19  "*Distribution Address*" means the address set forth (i) on the Schedules filed with the Bankruptcy Court, (ii) on the books and records of the Debtor or his agents, or (iii) in a letter of transmittal by a Holder of an Allowed Claim, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the foregoing listed documents.

1.20  *"Distribution Agent"* means if the Plan is confirmed under § 1191(b), the SubChapter V Trustee shall be the disbursing agent.  If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the disbursing agent.

1.21  *"Effective Date"* means the first Business Day occurring after the Confirmation Order becomes a Final Order.

1.22  *"Equity Interest"* means any equity interest in the Debtor represented by, related to, or arising from stock or other equity securities of the Debtor.

1.23  *"Estate"* means the estate of the Debtor pursuant to §§ 541 and 1115 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.24  "*Exempt*" means any property which the Debtor has exempted on the Schedules filed in the Chapter 11 Case pursuant to § 522 of the Bankruptcy Code.

1.25  "*Final Decree*" has the meaning given to it Bankruptcy Rule 3022.

1.26  *"Final Order"* means an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.27  "*Holder*" means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

1.28  "*Impaired*" means a Claim or Class that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.29  "*Lien*" has the meaning given to it in § 101(37) of the Bankruptcy Code, <u>i.e.</u>, means charge against property to secure payment of a debt or performance of an obligation.

1.30  *"Non-Tax Priority Claim"* means any claim against the Debtor to the extent entitled to priority in payment under § 507(a)(4)-(6) of the Bankruptcy Code.

1.31  "*Non-Exempt Property*" means any property of the Estate within the meaning of § 541 of the Bankruptcy Code that is not Exempt.

1.32  *"Petition Date"* means December 9, 2022.

1.33     *"Plan"* means this First Amended Subchapter V Plan dated March 15, 2023, of The High Street, Inc. under Chapter 11 of the United States Bankruptcy Code, and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.34     *"Priority Claim"* means a Claim, other than an Administrative Claim, that is entitled to priority under § 507 of the Bankruptcy Code.

1.35     *"Priority Tax Claim"* means a claim against the Debtor to the extent entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.36     *"Professionals"* means those persons or entities: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(2) and (4) of the Bankruptcy Code.

1.37     *"Pro Rata"* means proportionally according to the total amount of Allowed Claims in a particular Class.

1.38     *"Reorganized Debtor"* means the Debtor on and after the Effective Date.

1.39     *"Reserve Fund"* shall be a fund which shall be established by the Reorganized Debtor after the Confirmation Date, which shall be equal to a sum sufficient to pay disputed Claims which would have been paid under the Plan but for the dispute as either claimed by the creditor or determined by the Court.

1.40     *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.41     *"Secured Claim"* means a claim secured by a Lien on property of the Estate to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or, in the event such claim is subject to setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

1.42     *"SubChapter V Trustee"* means Jolene Wee as the Court appointed and duly qualified as Chapter 11 Subchapter V Trustee in this Chapter 11 Case.

1.43     *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

1.44     *"Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim or Secured Claim.

1.45     *"United States Trustee Fees"* means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to 11 U.S.C. § 1930, and interest due and payable under 31 U.S.C. §3717.

# ARTICLE II
# BACKGROUND

2.1 Information Regarding the Debtor.

The Debtor is a multi-line women's contemporary clothing wholesale showroom, based in the NYC garment district. Since the Debtor's formation in 2008, the Debtor has cultivated relationships across the globe with top retailers from department stores to boutiques. The buyers the Debtor has developed relationships with include Shop Bop, Bloomingdales, Bergdorf, and Intermix. The Debtor works with both emerging and established brands to develop wholesale strategy as well as offer product development consulting. The Debtor is hired by these designers and represents them selling their apparel and accessories from a collection of samples to buyers such as specialty stores, boutiques, and some department stores. The Debtor receives a commission on orders taken, with payment made thirty (30) days after the product has shipped to the stores and the stores have paid. The Debtor does not produce, ship, or process payments, and its operations are solely focused on sales and merchandising.

During the first ten years of the Debtor's operations, as the Debtor built relationships and a rapport in the garment district, the business grew with sales increasing each year. One example of the Debtor's success was *J Brand,* which the Debtor launched from a single store operation in 2005 to a worldwide brand that was sold in 2012 for $290 million. At its peak in 2015 – 2016, the Debtor's annual revenue exceeded $420,000. However, starting in 2017, the Debtor experienced a downturn. Several of the designers represented by the Debtor decided to try and cut costs by ending their relationship with the Debtor and working directly with buyers and stores, resulting in an immediate and significant drop in revenue. In 2017, annual revenue dropped to $352,496, dropped further in 2018 to $288,766. Between 2013 through 2017, the Debtor was in good standing with its landlord at the time, RH39 Realty, L.P. ("RH39"), timely paying the monthly rent of $10,000, plus real estate tax increases which were in excess of $10,000 each year. RH39 had reached out to the Debtor and begged it to stay as a tenant. Seeing a decline in its revenue, the Debtor negotiated an agreement with RH39 for a one (1) year extension, with an option to vacate after six (6) months. However, RH39 reneged on the agreement when the Debtor decided to relocate to a smaller showroom and moved out in November 2018. The following month, in December, 2018 RH39 commenced a lawsuit against the Debtor seeking damages from breach of the lease. The Debtor and RH39 engaged in settlement discussions and as a result entered into a Stipulation of Settlement whereby the Debtor and Allison Wilbur (the guarantor under the lease) agreed to pay RH39 $54,000, with $20,000 to be paid by March 5, 2020 and the remaining $34,000 to be paid by October 31, 2020 (the "Stipulation of Settlement").

Within a few weeks of the RH39 Settlement, the COVID pandemic shut down the Debtor's operations. The orders that were placed before the COVID pandemic were either refused by the buyers or purchased at a 70% discount. Many designers, including one the Debtor represented, went out of business. At the time, the retail industry, especially in the U.S. Northeast, was unable to quickly recovery the from the COVID. Between the shipping delays, increased costs of materials, and diminished workforce due to COVID sickness or exposure, production was often shut down causing significant delays. All of these factors, which were out of the control of the Debtor, contributed to orders being cancelled and the evaporation of the Debtor's revenue. The Debtor's annual revenue in 2020 was a mere $103,641 – 25% of the revenue generated 3 years prior. Although RH39 extended the Debtor's time to make the second $34,000 payment due under the Stipulation of Settlement to

June 1, 2021, the Debtor was not able to make the payment and defaulted. On March 4, 2022, RH39 commenced another action by filing the Confession of Judgment the Debtor signed in favor of RH39. On March 16, 2022, the Court entered a money judgment against the Debtor in the amount of $103,000 and against Allison Wilbur in the amount of $34,000 (the "Judgment"). RH39 sought to enforce the Judgment, and on November 22, 2022 the Debtor's bank account was restrained.

The Debtor filed this Chapter 11 case in order to remove the restraint against its bank account and restructure its affairs and propose a plan of reorganization to repay its creditors.

2.2 Description of Debtor's Assets and Liabilities.

Below is the Debtor's Balance Sheet as of January 31, 2023:

| BALANCE SHEET | | |
|---|---|---|
| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE OR SCHEDULED AMOUNT |
| *SCHEDULE A REAL PROPERTY* | | |
| None | $ - | $ - |
| **TOTAL REAL PROPERTY ASSETS** | $ - | $ - |
| | | |
| *SCHEDULE B PERSONAL PROPERTY* | | |
| Bank Account: Citizens Bank | $ - | $ 5,000.00 |
| DIP Bank Account: Citizens Bank #2869 | $ 4,904.59 | $ - |
| Accounts Receivable | | $ 7,500.00 |
| Office Computers & Electronics | $ 1,000.00 | $ 1,000.00 |
| Business Equipment | $ 1,000.00 | $ 1,000.00 |
| Professional Retainers (Kirby Aisner & Curley LLP) | $ 17,795.00 | $ 17,795.00 |
| Other Personal Property *(attach schedule)* | $ - | $ - |
| **TOTAL PERSONAL PROPERTY** | $ 24,699.59 | $ 32,295.00 |
| **TOTAL ASSETS** | $ 24,699.59 | $ 32,295.00 |
| | | |
| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE OR SCHEDULED AMOUNT |
| **LIABILITIES NOT SUBJECT TO COMPROMISE (Postpetition)** | | |
| Federal 1120 Taxes | $ - | $ - |
| Federal Employee Withholding Taxes (N/A) | $ - | $ - |
| NYS Sales Tax | | $ - |
| NYC Taxes | | $ - |
| Other Taxes *(attach schedule)* | | $ - |
| Professional Fees | $ 8,912.52 | $ - |
| Other Post-petition Liabilities *(list creditors)* | $ - | $ - |
| Secured Claims | $ - | $ - |
| **TOTAL POST-PETITION LIABILITIES** | $ 8,912.52 | $ - |
| **LIABILITIES SUBJECT TO COMPROMISE (Pre-Petition)** | | |
| Secured Debt | $ - | $ - |
| Priority Debt | $ 35,232.00 | $ 35,232.00 |
| Unsecured Debt | $ 121,640.00 | $ 121,640.00 |
| **TOTAL PRE-PETITION LIABILITIES** | $ 156,872.00 | $ 156,872.00 |
| | | |
| **TOTAL LIABILITIES** | $ 165,784.52 | $ 156,872.00 |

In addition to the Debtor's assets listed on the balance sheet above, the Debtor, together with its counsel, has reviewed and analyzed any transfers of the Debtor's assets and major transactions in the six (6) years prior to the filing of this Chapter 11 case. The Debtor believes, after a thorough investigation and review with its counsel, that no meritorious causes of action exist under §§ 510, 544, 547, 548, 550 and 553 of the Bankruptcy Code.

2.3    The Debtor's Historical Operations and Projections.

The Debtor's revenue is based upon orders placed at industry trade shows, which are then delivered a few months thereafter, and the commission paid to the Debtor about 30 days after delivery.

There are two (2) trade shows where most of the orders are placed. The August/September trade show sells items from the designers' Spring/Summer collection for the following year, with delivery to retailers in 1st quarter, and revenue to the Debtor 30 days' thereafter.  The February trade show sells items from the designers' Pre-Fall/Fall collection for that year, with delivery to retailers July through August, and commission paid to the Debtor from August through October. Some designers also sell a Holiday/Resort/Pre-Spring collection which can be ordered in April/May and delivered in the 4th quarter.

Below is a timeline summarizing the order/shipping/payment process:



Prior to the Petition Date, the Debtor booked approximately $200,000 of sales from the Spring/Summer Collection, which is shipped and paid in the first quarter of 2023. During the "off season" in the late Fall/early Winter of 2022, the Debtor was able to sell $60,000 of merchandise, which will be shipped and paid in the second quarter of 2023

The Debtor's sales of its designers' collections at NY Coterie Trade Show in February 2023 is the best indicator to forecast the Debtor's revenue for 2023.  The Debtor attended the NY Coterie Trade Show from February 21-23, 2023 and had its own sales booth, and also booked pre- and post-trade show appointments and orders. During the trade show, the Debtor booked approximately $160,000 in sales of the Pre-Fall/Fall Collection. There are also regional trade shows in Boston, Massachusetts and Westchester, New York. Between the post Coterie and regional trades show sales, the Debtor projects to book another $150,000, which would be shipped in the Summer, and commissions paid in August and September 2023.

The Debtor's commissions range between 10-12% of the sales. In 2022, the Debtor's gross income was $91,312.83, and after expenses of $89,997.83, there was a net profit of $1,315.00. A summary of the Debtor's 2022 Income and Expenses is below:

| | Jan '22 | Feb '22 | Mar '22 | Apr '22 | May '22 | Jun '22 | Jul '22 | Aug '22 | Sept '22 | Oct '22 | Nov '22 | Dec '22 | Total | Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | |
| Income | $ - | $ 29,847.84 | $ 800.00 | $ 6,910.82 | $ 29,051.26 | $ 2,296.09 | $ 3,956.03 | $ 2,400.00 | $ 2,942.03 | $ 3,304.67 | $ 2,185.67 | $ 4,135.55 | $ 87,829.96 | |
| Transfers | $ - | $ 3,482.87 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,482.87 | |
| Total | $ - | $ 33,330.71 | $ 800.00 | $ 6,910.82 | $ 29,051.26 | $ 2,296.09 | $ 3,956.03 | $ 2,400.00 | $ 2,942.03 | $ 3,304.67 | $ 2,185.67 | $ 4,135.55 | $ 91,312.83 | $ 7,609.40 |
| | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | |
| Purchases | $ - | $ - | $ - | $ - | $ - | $ 1,550.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,550.00 | $ 129.17 |
| Utilities | $ - | $ 778.14 | $ 244.51 | $ 664.35 | $ 447.10 | $ - | $ 941.41 | $ 159.41 | $ 132.97 | $ 318.82 | $ 269.95 | $ 159.95 | $ 4,116.61 | $ 343.05 |
| Office | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 31.99 | $ 75.34 | $ 18.00 | $ 56.32 | $ 192.00 | $ 373.65 | $ 31.14 |
| Meals | $ 265.11 | $ 441.13 | $ 582.92 | $ 2,302.50 | $ 1,145.53 | $ 1,395.98 | $ 1,655.56 | $ 2,170.40 | $ 867.68 | $ 884.25 | $ 306.22 | $ - | $ 12,017.28 | $ 1,001.44 |
| Ref - Meals | $ - | $ (1.20) | $ - | $ - | $ - | $ (7.66) | $ - | $ (49.66) | $ - | $ (8.43) | $ - | $ - | $ (66.95) | $ (5.58) |
| Auto & Travel | $ 223.10 | $ 258.08 | $ 476.07 | $ 144.99 | $ 516.09 | $ 1,589.76 | $ 636.04 | $ 282.25 | $ 256.14 | $ 901.92 | $ 72.79 | $ - | $ 5,357.23 | $ 446.44 |
| Ref - Auto & Tr | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (60.00) | $ - | $ (60.00) | $ (5.00) |
| Fees - Trade Show | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 200.00 | $ - | $ - | $ - | $ 200.00 | $ 16.67 |
| Postage & Frt | $ - | $ - | $ - | $ 12.10 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 12.10 | $ 1.01 |
| Bank Charges | $ - | $ 60.00 | $ 30.00 | $ 15.00 | $ 18.00 | $ 18.00 | $ 30.00 | $ 58.00 | $ 87.00 | $ 55.00 | $ 28.00 | $ - | $ 399.00 | $ 33.25 |
| Lisc & Fees | $ - | $ - | $ - | $ 16.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 16.00 | $ 1.33 |
| Prof Fees - Acctg | $ - | $ 5,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 5,000.00 | $ 416.67 |
| Owner Distrib | $ 2,228.33 | $ 20,585.84 | $ 2,276.50 | $ 3,194.77 | $ 15,605.63 | $ 2,145.32 | $ 3,416.42 | $ 5,170.99 | $ 2,004.83 | $ 2,078.42 | $ 1,638.17 | $ - | $ 60,345.22 | $ 5,028.77 |
| Ref - Owner Distrib/Salary | $ - | $ - | $ (180.65) | $ - | $ - | $ (454.01) | $ - | $ (1,018.95) | $ (1,091.57) | $ - | $ - | $ - | $ (2,745.18) | $ (228.77) |
| Miscellaneous | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| To Close A/C | $ - | $ 3,482.87 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,482.87 | $ 290.24 |
| | $ 2,716.54 | $ 30,604.86 | $ 3,429.35 | $ 6,349.71 | $ 17,732.35 | $ 6,237.39 | $ 5,660.48 | $ 6,731.81 | $ 3,623.96 | $ 4,247.98 | $ 2,311.45 | $ 351.95 | $ 89,997.83 | $ 7,499.82 |
| | | | | | | | | | | | | | | |
| Net Profit/Loss | $ (2,716.54) | $ 2,725.85 | $ (2,629.35) | $ 561.11 | $ 11,318.91 | $ (3,941.30) | $ (1,704.45) | $ (4,331.81) | $ (681.93) | $ (943.31) | $ (125.78) | $ 3,783.60 | $ 1,315.00 | $ 109.58 |

Based on the Debtor's sales in the 4th quarter of 2022 and first quarter of 2023, the Debtor projects a modest net profit of $500 quarterly ($2,000 annually) as set forth in the projection below (the "Projection"):

| | 1st Quarter '23 Jan, Feb, March | 2nd Quarter '23 Apr, May, June | 3rd Quarter '23 July, Aug, Sept | 4th Quarter '23 Oct, Nov, Dec |
|---|---|---|---|---|
| **Income** | | | | |
| Commissions from Booked Sales | $ 13,301.00 | $ 7,200.00 | $ 19,200.00 | $ - |
| Commissions from Anticipated Sales | $ - | $ 12,000.00 | $ 18,000.00 | $ 18,000.00 |
| Total | $ 13,301.00 | $ 19,200.00 | $ 37,200.00 | $ 18,000.00 |
| | | | | |
| **Expenses** | | | | |
| Purchases | $ - | $ 100.00 | $ 100.00 | $ 100.00 |
| Utilities | $ 1,800.00 | $ 1,800.00 | $ 1,800.00 | $ 1,800.00 |
| Office | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| Meals | $ 700.00 | $ 500.00 | $ 500.00 | $ 300.00 |
| Auto & Travel | $ 1,300.00 | $ 500.00 | $ 500.00 | $ 100.00 |
| Fees - Trade Show | $ 2,300.00 | $ 1,500.00 | $ 3,000.00 | $ - |
| Postage & Frt | $ - | $ 50.00 | $ 50.00 | $ 50.00 |
| Bank Charges | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 |
| Prof Fees - Acctg | $ 500.00 | $ 300.00 | $ 300.00 | $ 300.00 |
| Owner Distrib/Salary | $ 9,200.00 | $ 7,750.00 | $ 20,500.00 | $ 8,500.00 |
| Taxes (Estimated) | | $ 3,325.00 | $ 7,150.00 | $ 3,550.00 |
| Miscellaneous | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| | $ 16,285.00 | $ 16,310.00 | $ 34,385.00 | $ 15,185.00 |
| | | | | |
| Net Profit/Loss (Booked) | $ (2,984.00) | $ (9,110.00) | $ (15,185.00) | $ (15,185.00) |
| Net Profit/Loss (Anticipated) | $ (2,984.00) | $ 2,890.00 | $ 2,815.00 | $ 2,815.00 |
| | | | | |
| Priority Tax Claim Payment | | $ 2,296.80 | $ 2,296.80 | $ 2,296.80 |
| General Unsecured Claim Payment | | $ 500.00 | $ 500.00 | $ 500.00 |
| | | | | |
| Beginning Balance | $ 4,328.59 | $ 1,344.59 | $ 1,437.79 | $ 1,455.99 |
| Deposits | $ 13,301.00 | $ 19,200.00 | $ 37,200.00 | $ 18,000.00 |
| Disbursements | $ 16,285.00 | $ 19,106.80 | $ 37,181.80 | $ 17,981.80 |
| Ending Balance | $ 1,344.59 | $ 1,437.79 | $ 1,455.99 | $ 1,474.19 |

8

# ARTICLE III
# DESIGNATION OF CLAIMS

All Claims, as defined herein against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

3.1     Classification of Claims. Section 2.2 sets forth the designation of the Classes of Claims. A Claim is classified in a particular Class for voting and Distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes.

Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class than a more generally defined Class, it shall be included in the more specifically defined Class. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Claims, Administrative Professional Fee Claims, United States Trustee's Fees, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in section 3.1 in accordance with § 1123(a)(1) of the Bankruptcy Code. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided for herein shall be in full and final satisfaction, settlement, release and discharge of such respective Claims.

3.2     Classes. For purposes of the Plan, those persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code as follows:

*Class 1*: shall consist of all Allowed Secured Claims.
*Class 2*: shall consist of the Allowed General Unsecured Claims.
*Class 3*: shall consist of the Holders of Equity Interests in the Debtor.

# ARTICLE IV
# TREATMENT OF CLAIMS UNDER THE PLAN

The treatment of claims under the Plan is as follows:

4.1 Unclassified Claims.

(a)     Allowed Administrative Claims other than Administrative Professional Fee Claims: These Allowed Claims shall be paid in full, in Cash, in such amounts as (i) are incurred in the ordinary course of business by the Debtor; (ii) are Allowed by the Bankruptcy Court upon the later of the Effective Date, the date upon which there is a Final Order allowing such Administrative Expense Claim or any other date specified in such Order; or (iii) may be agreed upon between the Holder of such Administrative Expense Claim and the Debtor. The Debtor estimates that Allowed Administrative Claims in the ordinary course to be $-0-.

(b)     Allowed Administrative Professional Fee Claims: All awards or allowances by the Bankruptcy Court of Professionals fees and expenses, or of compensation for services rendered or

reimbursement of expenses incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Professionals Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Professionals Claim and the Debtor or, on and after the Effective Date, the Reorganized Debtor. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court. The Debtor estimates all Allowed Administrative Professional Fee Claims, net of retainer payments to be $-0-.

(c) <u>Priority Tax Claims</u>: Allowed Priority Tax Claim of NYS Dept. of Taxation & Finance in the Allowed amount of $146.41 shall be paid in full, in Cash, on the Effective Date. The Allowed Priority Tax Claim of NYC Dept. of Finance in the amount of $37,982.00 shall be paid the amount of their Allowed Claim plus seven and three-quarters percent post-Effective Date (7.75%) interest, in full and in Cash, in twenty (20) equal quarterly installments of $2,296.80, starting on the Effective Date.

(d) <u>Subchapter V Trustee Fees</u>: Under the Plan, the Subchapter V Trustee's reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses incurred through and including the Confirmation Date under Sections 330(a), and 326(a) and (b) of the Bankruptcy Code, if granted, shall be paid in full in such amounts as allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Claim becomes Allowed; or (ii) upon such other terms as may be mutually agreed upon between the Subchapter V Trustee and the Debtor or, on and after the Effective Date, the Reorganized Debtor. The Reorganized Debtor shall comply with the reporting requirements of the Office of the United States Trustee until the entry of a Final Decree or dismissal or conversion of the case and shall file quarterly reports on January 15, April 15, July 15 and October 15 of each year until entry of a Final Decree. The Debtor estimates the Subchapter V Trustee's fees and expenses to be approximately $5,000.00[1].

    4.2    <u>Classified Claims</u>

(a) <u>Class 1</u>: There are no Allowed Secured Claims against the Debtor. Class 1 Claims are not Impaired under the Plan, holders are not entitled to vote on the Plan, and are deemed to accept the Plan. There will be no payment to Class 1 Claims under the Plan.

(b) <u>Class 2</u>: Class 2 shall consist of the Allowed Unsecured Claims. Each holder of an Allowed Unsecured Claim shall receive a distribution, Pro Rata, from the Debtor's net income in in twenty (20) equal quarterly payments in the amount of $500.00 commencing on the Effective Date, and thereafter on the 30th day of March, June, September, and December, of each year, and

---

[1] The SubChapter V Trustee estimates that her fees and expenses through plan confirmation to be approximately $5,000, subject to Court approval of her fee application.

concluding on December 30, 2027. Class 2 Claims Holders are summarized below:

| Creditor | Allowed Claim Amount | Quarterly Distribution | 7.09 % Total Distribution |
|---|---|---|---|
| NYS Dept. of Taxation & Finance | $2,423.36 | $8.59 | $171.80 |
| Internal Revenue Service | $12,825.00 | $45.45 | $909.00 |
| Mark Schreck and Company CPA, PC | $22,840.00 | $80.94 | $1,618.80 |
| RH39 Realty L.P. | $103,000.00 | $365.02 | $7,300.40 |
| TOTAL | $141,088.36 | $500.00 | $10,000.00 |

The Debtor estimates an approximate 7.09% distribution to Class 2 Claims, with the first *pro rata* distribution being made on the Effective Date. Class 2 Claims are Impaired and holders are entitled to vote under the Plan.

(c) Class 3: Class 3 consists of the Holders of Equity Interests in the Debtor, including any warrants or convertible securities in the Debtor. The only holder of a Class 3 Equity Interest in Alison Wilbur. Upon the Effective Date, the Class 3 Equity Interests shall be deemed cancelled and extinguished. Holders of Class 3 Equity Interests shall not receive any distribution under the Plan on account of any Class 3 Equity Interests. 100% of the common stock equity interests in the Reorganized Debtor shall be issued to Allison Wilbur in partial consideration for her contributions to the Reorganized Debtor's operations. Class 3 Equity Interests are impaired pursuant to Section 1124 of the Bankruptcy Code and are deemed to reject the Plan.

## ARTICLE V
## CONFIRMATION OF THE PLAN

5.1 Voting by Impaired Classes of Claims: The Holders of Claims in Class 2 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited. A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(c) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

5.2 Acceptance by Impaired Classes of Claims: If the Holders of Claims in Class 2 vote to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will seek confirmation of the Plan under §§1191(a) and 1129(a).

5.3 Rejection by Impaired Classes of Claims: If the Holders of Claims in Class 2 do not vote to accept the Plan as set forth in Section 5.1 hereinabove, the Debtor will seek confirmation of this Plan pursuant to Section 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

# ARTICLE VI
# MEANS FOR IMPLEMENTATION

6.1     Means of Implementation. The Plan will be financed from the Debtor's projected net income. On or before the Effective Date of the Plan, the Debtor shall deposit into an escrow account maintained by its counsel the amount of $7,943.21, to fund the initial distribution under the Plan. Below is a summary of the payments to be made upon commencing on the (estimated) Effective Date:

|    |            | Administrative Claims || Priority Tax Claims || Class 2 Claims ||||
|    |            | Kirby Aisner & Curley LLP | Jolene Wee, Subchapter V Trustee | NYS Dept Tax & Finance | NYC Dept. of Finance | NYS Dept Tax & Finance | Internal Revenue Service | Mark Schreck and Company CPA, PC | RH39 Realty L.P. |
|---|---|---|---|---|---|---|---|---|---|
| 1  | 4/30/2023  | $ -        | $ 5,000.00 | $ 146.41   | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 2  | 6/30/2023  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 3  | 9/30/2023  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 4  | 12/30/2023 | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 5  | 4/30/2024  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 6  | 6/30/2024  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 7  | 9/30/2024  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 8  | 12/30/2024 | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 9  | 3/30/2025  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 10 | 6/30/2025  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 11 | 9/30/2025  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 12 | 12/30/2025 | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 13 | 3/30/2026  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 14 | 6/30/2026  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 15 | 9/30/2026  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 16 | 12/30/2026 | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 17 | 3/3/2027   | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 18 | 6/30/2027  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 19 | 9/30/2027  | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
| 20 | 12/30/2027 | $ -        | $ -        | $ -        | $ 2,296.80 | $ 8.59     | $ 45.45    | $ 80.94    | $ 365.02 |
|    | TOTAL      | $ -        | $ 5,000.00 | $ 146.41   | $ 45,936.00| $ 171.80   | $ 909.00   | $ 1,618.80 | $ 7,300.40 |

6.2     Professional Fees Post-Confirmation. All Professionals' fees and expenses for services rendered in connection with this Chapter 11 Case and the Plan after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date and the resolution of Disputed Claims, shall be billed to the Reorganized Debtor, and paid by the Reorganized Debtor in the ordinary course, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Professionals cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

6.3     Post-Confirmation Duties of the SubChapter V Trustee. If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, following the entry of the Confirmation Order and substantial consummation of the Plan, the SubChapter V Trustee services shall terminate as contemplated by Section 1183(c) of the Bankruptcy Code.

# ARTICLE VII
# SUBCHAPTER V PROVISIONS

7.1     Liquidation Analysis. To confirm this Plan, the Court must find that all creditors

will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. In a chapter 7 liquidation, the general unsecured creditors would receive NO distribution.

### Chapter 7 Liquidation Analysis

| Assets | Liquidation Value |
|---|---|
| Bank Account | $5,000.00 |
| Office Computers & Electronics | $1,000.00 |
| Business Equipment | $1,000.00 |
| Accounts Receivable | $26,400.00 |
| Professional Retainers (Kirby Aisner & Curley LLP) | $17,795.00 |
| **Total Assets** | **$51.195.00** |
| Less Costs Associated with Liquidation: | |
| Chapter 7 Professional Fees (Est.) | $15,000.00 |
| Auctioneer Fees & Costs | $1,000.00 |
| Chapter 7 Trustee Commission | $5,750.00 |
| **Total Liquidation Costs** | **$21,750.00** |
| Less Chapter 11 Administrative Payable Claims | $0.00 |
| Less Chapter 11 Professional Fee Claims | $18,000.00 |
| Less Chapter 11 Priority Claims | $37,982.00 |
| ==Net Available for Unsecured Creditors== | ==($34,232.00)== |
| ==**Projected Distribution in Chapter 7 Liquidation**== | ==**0%**== |

A chapter 7 liquidation would result in **NO** distribution. Therefore, the Plan which proposes a 7.09% distribution to the general unsecured creditors, no creditor would receive any greater recovery under a Chapter 7 liquidation than the distribution proposed herein.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1    Distribution Agent. If the Plan is confirmed under § 1191(b), the SubChapter V Trustee shall be the Disbursing Agent. If the Plan is confirmed under § 1191(a), the Reorganized Debtor shall be the Disbursing Agent.

8.2    Manner of Distributions under the Plan. Distributions to be made pursuant to the Plan shall be made by check drawn on a domestic bank and mailed to the Distribution Address of the recipient of the Distribution. Any Distribution required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

8.3.    Rounding to the Nearest Dollar. Any other provision of the Plan to the contrary withstanding, no payments of portions of a dollar will be made. Whenever any payment of a portion of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down).

8.4    Unclaimed Cash. Except as otherwise provided herein, in the event any claimant fails to cash any Distribution within six (6) months from the date such Distribution is distributed, such claimant shall forfeit all rights thereof, and to any and all future payments, and thereafter the

Claim for which such Distribution was distributed shall be treated as a disallowed Claim. All unclaimed Distributions shall be redistributed with the next distribution.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

9.1     Time for Objections to Claims. Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by Reorganized Debtor up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Disbursing Agent will hold in the Reserve Fund such funds as would be necessary to make the required distribution on the Claim, as listed either in the Schedules or the filed proof(s) of Claim.

9.2     Resolution of Disputed Claims. Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claim, in his sole discretion, without notice to any party in interest.

9.3     Payments. Payments and Distributions to each Holder of a disputed Claim that ultimately becomes an allowed Claim by a Final Order of the Court shall be made in accordance with the Plan. Such payments and distributions shall be made within thirty (30) days after the later of the Distribution Date or the entry of a Final Order allowing such Claim. Payments made in accordance with this section shall not include interest on the amount of such payment.

## ARTICLE X
## DISCHARGE AND INJUNCTION

10.1    Discharge. If the Debtor's Plan is confirmed under Section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6) of the Bankruptcy Code. If the Debtor's Plan is confirmed under Section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in Section 1192 of the Bankruptcy Code; or (ii) excepted from discharge under Section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

10.2    Exculpation. Neither the Debtor nor any of its respective trustees, officers, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken that occurred after the Petition Date in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to (a) their obligations under the Plan and any related agreement or (b) for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of

confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, the Purchaser, or any of their respective trustees, members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Debtor Released Parties"), nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Debtor Released Parties referred to herein for any liability whatever, including without limitation, any Claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties, or (b) limit the liability of the Debtor's Professionals Released pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

## ARTICLE XI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1   Executory Contracts and Unexpired Leases. Plan: The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 11.1 above, or before the date of the order confirming this Plan, upon the effective date of this Plan. **If you are a party to a lease or contract to be assumed or rejected and you object to the treatment of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the Confirmation of the Plan. ANY REJECTION DAMAGE CLAIM OR CLAIM TO A CURE PAYMENT MUST ALSO BE FILED BY SUCH DEADLINE.**

## ARTICLE XII
## DEFAULT

12.1   Failure of the Debtor to make the Distributions required under the Section 6.1 of the Plan within thirty (30) days of the deadlines set forth therein, or failure of the Debtor to comply with any of the covenants or obligations contained in the Plan, which failure shall remain uncured for a period of ten (10) days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code. In the event of an uncured default hereof, any creditor or party in interest may seek conversion or dismissal of this Chapter 11 case.

## ARTICLE XIII
## RETENTION OF JURISDICTION

13.1 Following the Effective Date of the Plan, the Bankruptcy Court shall retain such jurisdiction over this case as is legally permissible, including such jurisdiction as is necessary to

ensure that the intents and purposes of the Plan are carried out. The Bankruptcy Court shall also expressly retain jurisdiction, without limitation: (i) to hear and determine all Claims against the Debtor and any objections thereto; (ii) to enforce and interpret the terms and conditions of the Plan; and (iii) to determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

## ARTICLE XIV
## GENERAL & MISCELLANEOUS PROVISIONS

14.1 <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

14.2 <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

14.3 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

14.4 <u>Article and Section References</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

14.5 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

14.6 <u>Revocation or Withdrawal of the Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing. If the Debtor so revokes or withdraws the Plan <u>in its entirety</u>, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, the Debtor or any other person, or (b) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. If the Debtor so revokes or withdraws the Plan <u>in part</u>, then only the part of the Plan so revoked or withdrawn shall be null and void.

14.7 <u>Post-Effective Date Management of the Reorganized Debtor</u>. As of the Effective Date, Alison Wilbur shall manage the day-to-day operations of the Reorganized Debtor and shall hold the title of President of the Reorganized Debtor. Ms. Wilbur shall receive an initial base salary of $53,975.00, without any company benefit plans.

14.8 <u>Modification of the Plan</u>. The Debtor reserves the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may

be required. After the Effective Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with §1127 of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

      14.9      <u>Deletion of Certain Classes</u>. Any class of Claims that is not occupied as of the date of the commencement of the Confirmation hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for all purposes.

      14.10      <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any person with respect to any matter set forth herein.

      14.11      <u>Further Actions</u>. The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, certificates, releases, and other agreements and to take such other action as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated herein and therein.

      14.12      <u>Status Reports</u>. Subsequent to the Effective Date of this Plan, the Debtor shall file with the Bankruptcy Court post-Confirmation status reports detailing its progress toward a Final Decree in this case. Status reports shall be filed on or before January 15, April 15, July 15, and October 15 of each year until a Final Decree is entered closing the case.

      14.13      <u>Notices</u>. Any notice to be provided under the Plan shall be in writing and sent by certified mail, return receipt requested, or by email, addressed as follows:

Julie Cvek Curley, Esq.<br>
Kirby Aisner & Curley LLP<br>
700 Post Road, Suite 237<br>
Scarsdale, New York 10583<br>
jcurley@kacllp.com

Dated: New York, New York  
       March 15, 2023                                THE HIGH STREET, INC.

                                                              By: */s/ Allison Wilbur*  
                                                                   Allison Wilbur, President

Dated: Scarsdale, New York  
       March 15, 2023                                KIRBY AISNER & CURLEY LLP  
                                                                  *Attorneys for the Debtor*  
                                                                  700 Post Road, Suite 237  
                                                                  Scarsdale, New York 10583  
                                                                  (914) 401-9500  
                                                                  jcurley@kacllp.com

                                                                By: */s/ Julie Cvek Curley*  
                                                                   Julie Cvek Curley, Esq.